54 F.3d 772
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Barbara A. BEINLICH, Plaintiff-Appellant,
v.
CURRY DEVELOPMENT, INCORPORATED, Defendant-Appellee.
 No. 94-1465.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1995.
Decided May 22, 1995.
 
 ARGUED: Edward David McGuire, Jr., Annandale, VA, for Appellant. David E. Nagle, LECLAIR, RYAN, JOYNES, EPPS & FRAMME, P.A., Richmond, VA, for Appellee. ON BRIEF: Julie Benson Ross, LECLAIR, RYAN, JOYNES, EPPS & FRAMME, P.A., Richmond, VA, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and LUTTIG and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Barbara A. Beinlich appeals from the district court's entry of summary judgment in her employment discrimination lawsuit. We affirm.
 
 
 2
 * Appellee Curry Development, Inc. ("CDI") is a real estate development firm located in northern Virginia. In late December 1991, Beinlich was hired to work as the executive assistant for CDI's then president, William A. Petr, Jr. Her job duties included typing, filing, occasional phone work, and supervising the front-desk receptionist. She was discharged on October 30, 1992. Beinlich claims that she was fired because of her opposition to unlawful employment practices at CDI. Her theory involves CDI's alleged unwillingness to have a black person serve as the company's receptionist.
 
 
 3
 Beinlich claims to have been told by Petr, in April 1992, that blacks were not wanted at the receptionist's desk for "appearance['s] sake." Six months later, the regular receptionist went on vacation and Beinlich contacted a personnel agency to secure a temporary replacement. The agency sent a woman named Harriette Fuller, who is black. When Fuller arrived at CDI on Friday, October 23, 1992, Petr allegedly stopped by Beinlich's office and said "We'd better be certain Fuller will work out or replace her on Monday." Shortly thereafter, another CDI executive, Andrew J. Somerville, III, allegedly said to Beinlich, "Make sure Fuller can handle the job or get someone else." Somerville also supposedly told Beinlich that Mr. Curry, CDI's owner, would have a problem with Fuller.
 
 
 4
 Beinlich inferred that Petr and Somerville sought to have Fuller removed because of her race. Uncomfortable with this idea, she took no action to replace Fuller--despite the fact that she had supervisory authority over the receptionist--and claims to have told Somerville, "Discrimination is illegal." Somerville says that he never heard this remark. All parties agree that Fuller completed her one-week stint at CDI without incident. On the last day of Fuller's assignment, however, Beinlich was terminated. In Beinlich's exit interview, Petr allegedly told her "you should have replaced Fuller on Monday."
 
 
 5
 After unsuccessfully seeking relief from the EEOC, Beinlich brought this action under Sec. 704(a) of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-3(a). She claimed that she had been terminated for objecting to the purported attempt to discriminate against Fuller.[1] CDI contends that Beinlich was fired because of deficiencies in her work, including excessive delegation of typing work to the receptionist and failure to review typing assignments that were given to the receptionist. In fact, CDI maintains, Petr had already decided to fire Beinlich well before Fuller even appeared on the scene. It points to a Washington Post classified ad for Beinlich's position which ran for three days in September 1992--over a month before Fuller's stint at CDI.
 
 
 6
 The district court granted summary judgment in CDI's favor, reasoning that Beinlich had failed to establish a prima facie case of discrimination, and that in any event CDI's employment decision was based on a legitimate, non-discriminatory motive. This appeal followed.
 
 II
 
 7
 We review the district court's grant of summary judgment de novo. Nguyen v. CNA Corp., 44 F.3d 234, 236 (4th Cir.1995). Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment record, "[a]ll reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion." Nguyen, 44 F.3d at 237.
 
 
 8
 The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A mere scintilla of evidence supporting the case is insufficient. Id.
 
 
 9
 Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.) (citations edited), cert. denied, 115 S.Ct. 67 (1994).
 
 III
 
 10
 In Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir.1985), we outlined the proper method of analyzing a retaliation claim under Title VII. The employee is initially required to establish a prima facie case of retaliation. Id. at 365.
 
 
 11
 Such a prima facie case consists of three elements: 1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action.
 
 
 12
 Id.; see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). If the employee establishes a prima facie case, a presumption of retaliation arises. Ross, 759 F.2d at 365. To rebut this presumption, the employer bears the burden of articulating a legitimate, non-discriminatory reason for the adverse action. Id. If the employer satisfies its burden of production, the presumption "drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). The employee then has an opportunity to show that the proffered reason is merely a pretext for retaliation. Ross, 759 F.2d at 365. At all times, the employee bears the ultimate burden of proving that the employer engaged in illegal retaliation. Id.; see generally St. Mary's Honor Ctr., 113 S.Ct. 2742.
 
 
 13
 In this case, we think Beinlich's evidentiary showing suffices--albeit just barely--to avoid summary judgment under the first step of the Ross framework. In light of the alleged comments of Petr and Somerville, a reasonable jury, in our estimation, could conclude that Beinlich engaged in protected activity by opposing CDI's purported attempt to fire Fuller on grounds of her race. See 42 U.S.C. Sec. 2000e-3(a) (protected activity includes opposing an employment practice which is unlawful under Title VII).[2] As for the other two elements of the prima facie case, it is undisputed that Beinlich was terminated, and the timing of her termination, plus Petr's alleged statement in the exit interview, suffice to indicate a causal connection for purposes of the prima facie case.
 
 
 14
 CDI, however, has identified a legitimate, non-discriminatory reason for Beinlich's termination: poor job performance. If the case were to go forward, therefore, Beinlich would lose the presumption created by the prima facie case and would be required to prove that the reason for her discharge was unlawful retaliation. See 759 F.2d at 365; see generally St. Mary's Honor Ctr., 113 S.Ct. 2742. CDI maintains that Beinlich would be unable to carry her burden because the decision to terminate her had already been made before the Fuller incident occurred. According to CDI, this fact decisively refutes the possibility that retaliation was a "motivating factor" in the decision to terminate Beinlich. See 42 U.S.C. Sec. 2000e-2(m) (violation of Title VII established when plaintiff proves that unlawful discrimination "was a motivating factor for any employment practice, even though other factors also motivated the practice"); 42 U.S.C. Sec. 2000e-3(a) (discrimination unlawful, under the retaliation provision, if it occurs "because" of employee's protected activity).
 
 
 15
 We find CDI's argument persuasive. The record conclusively demonstrates that Beinlich's termination was a foregone conclusion before Fuller appeared on the scene at CDI. Over a month before Fuller's arrival, Petr ran a three-day classified ad for Beinlich's position in the Washington Post. Petr has stated in a sworn affidavit that he ran the ad after making a final decision to replace Beinlich on the grounds of poor job performance. This assertion is uncontradicted. Petr's affidavit explains that he refrained from firing Beinlich in September only because he wanted time to find a replacement.
 
 
 16
 Beinlich admits that she saw the Post ads, and that she was told by a co-worker that she was about to be terminated. Indeed, she admits confronting Petr about the classified ad and asking him whether her job was secure. His answer was, as she conceded at her deposition, noncommittal. See J.A. 126a ("I asked Mr. Petr if this ad was for my position, and he said he didn't know, that they were thinking of adding someone to their staff."); see also id. at 125a.
 
 
 17
 Beinlich argues that causation can nevertheless be inferred because she was not fired until after the incident with Fuller, because Petr had not yet located a replacement at the time of the discharge, and because of Petr's alleged statement in the exit interview that "you should have fired Fuller on Monday." We agree that these facts, taken in the light most favorable to Beinlich, might conceivably create an inference that the timing of Beinlich's departure was related to the Fuller episode. They do not, however, refute the uncontroverted evidence showing that the fact of Beinlich's termination had already been pre-ordained. At most, then, Beinlich's evidence could possibly support a claim that she was discharged sooner than she otherwise would have been. But that is not the essence of her claim. She alleges, rather, that she would not have been fired at all but for her opposition to the alleged unlawful conduct involving Fuller. In light of the factual record, that allegation is unsustainable.
 
 IV
 
 18
 We conclude that summary judgment was properly granted because Beinlich has failed to demonstrate a genuine issue of material fact regarding the required causal link between her termination and her alleged "opposition" under Title VII. Accordingly, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Beinlich also claimed that she objected to alleged unlawful employment practices relating to another employee. She has now abandoned that allegation
 
 
 [2]
 Employees proceeding under the "opposition clause" of Sec. 2000e-3(a) need not prove that their employer actually committed a violation of Title VII. Rather, consistent with the statute's remedial purpose, the employee must show only that she "opposed an unlawful employment practice which [s]he reasonably believed had occurred or was occurring." Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988); Gifford v. Atchison, T. & S.F.R. Co., 685 F.2d 1149, 1156-57 (9th Cir.1982); Rucker v. Higher Educ. Aids Bd., 669 F.2d 1179, 1182 (7th Cir.1982); 2 L. Larson, Employment Discrimination Sec. 34.03 (2d ed.1994)
 Standing alone, the remarks that Fuller should be fired if unable to do the job constitute no evidence of an intent to discriminate. But those statements cannot be divorced from their context: the earlier alleged statement by Petr that blacks were unwelcome in the receptionist position at CDI, and Somerville's purported claim that Mr. Curry would have a problem with Fuller. If these remarks actually were made, they supply a context which, we believe, could convince a reasonable jury that Beinlich reasonably believed unlawful discrimination was afoot at CDI. Likewise, while Beinlich's response was somewhat vague, we nevertheless think it could lead a reasonable jury to conclude that Beinlich "opposed" an unlawful employment practice within the meaning of Title VII.