USCA1 Opinion

 

 November 25, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1628 JAMES TANCA, Plaintiff - Appellant, v. NILS NORDBERG, COMMISSIONER, AND THE MASSACHUSETTS DEPARTMENT OF EMPLOYMENT AND TRAINING, Defendants - Appellees. ____________________ ____________________ ERRATA SHEET _____________________ The opinion of this Court issued on October 28, 1996 is amended as follows: On page 13, line 3, delete "lead" and replace it with "leads". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1628 JAMES TANCA, Plaintiff - Appellant, v. NILS NORDBERG, COMMISSIONER, AND THE MASSACHUSETTS DEPARTMENT OF EMPLOYMENT AND TRAINING, Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy J. Gertner, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ _____________________ Scott A. Lathrop, with whom Scott A. Lathrop, P.C. was on _________________ _______________________ brief for appellant. Benjamin Robbins, Assistant Attorney General, with whom _________________ Scott Harshbarger, Attorney General of Massachusetts, and Douglas _________________ _______ Wilkins, Assistant Attorney General, were on brief for appellees. _______ ____________________ October 28, 1996 ____________________ TORRUELLA, Chief Judge. Appellant James Tanca TORRUELLA, Chief Judge.  ____________ ("Tanca") brought this action alleging retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e-3, against his employer, the Massachusetts Department of Employment and Training ("DET") and Nils Nordberg, Commissioner of the DET.1 The central issue is whether the changes wrought in the law by section 107 of the Civil Rights Act of 1991, Public Law 102-166 (the "1991 Act"), which explicitly apply only to discrimination claims (and which were meant to partially overrule Price _____ Waterhouse v. Hopkins, 490 U.S. 228 (1989)), also apply to claims __________ _______ of retaliation. We hold that they do not and that the rule of Price Waterhouse applies to retaliation claims. ________________ BACKGROUND BACKGROUND The following facts are drawn from the district court's Memorandum and Order. Tanca is a white male who was a longterm DET employee. After several minority employees were promoted into positions for which Tanca had applied, Tanca complained to high level DET managers. He believed that he was better qualified than the promoted employees and that their promotion was due to reverse discrimination. At some point, a position as an Unemployment Insurance Manager ("UI") became available in DET's Hyannis, Massachusetts, office, where Tanca worked, and he applied. Instead of offering him the Hyannis UI position, however, DET offered him a similar position in New Bedford,  ____________________ 1 A count alleging violations of Mass. Gen. L. ch. 151B was voluntarily dismissed. -2- Massachusetts. Tanca brought suit, alleging that DET retaliated against him for making his complaints -- a protected activity -- by refusing him the Hyannis position and offering him the New Bedford one. Because of the distance between Hyannis, where he lived, and New Bedford, Tanca described the offered position as significantly less desirable. DET denied that the decision was motivated by retaliation, and maintained that it was based solely on legitimate concerns regarding Tanca's management abilities and DET's ability to supervise Tanca in New Bedford. The case was tried before a jury, which found that Tanca had engaged in good faith activity protected under Title VII, that the activity was a motivating factor in DET's decision (and thus that DET had retaliated), but that Tanca would not have received the Hyannis UI position even absent the illegitimate consideration. The district court then granted defendants' Motion for Judgment as a Matter of Law, finding that Price _____ Waterhouse governed the parties' dispute and that, under that __________ case, because the jury found that DET would have reached the same decision absent any retaliatory motives, DET could not be found liable. This appeal ensued. DISCUSSION DISCUSSION A. Price Waterhouse and the 1991 Act A. Price Waterhouse and the 1991 Act _________________________________ We first outline the pertinent law, and then turn to the interpretation of the statutes in question. 1. The Legal Framework  1. The Legal Framework  ___________________ At the center of this case sits the Supreme Court's -3- decision in Price Waterhouse. In that gender bias decision, the ________________ Court confronted a case in which the adverse employment decision resulted from a mixture of legitimate and illegitimate motives. Settling a dispute among the circuits over how to deal with such "mixed motive" cases, see Price Waterhouse, 490 U.S. at 238 n.2, ___ ________________ the Court determined that "an employer shall not be liable if it can prove that, even if it had not taken gender into account, it would have come to the same decision regarding a particular person." Id. at 242. As the trial court in this case noted, ___ "[p]ut another way, the Court held that it was an affirmative defense to a charge of unlawful intentional discrimination to show that the employer would have made the same decision even in the absence of an unlawful motive." Memorandum and Order, at 3. Although Price Waterhouse was a gender case under 42 _________________ U.S.C. 2000e-2, the Supreme Court stated that its analysis extended to the other unlawful employment practices listed in section 2000e-2(a), namely, "discrimination based on race, religion, or national origin." Id. at 244 n.9. Subsequent cases ___ have extended the Price Waterhouse analysis to a series of other ________________ discrimination contexts, including retaliation claims. See ___ Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039-41 (2d Cir. ________ ____________________ 1993) (analyzing Title VII retaliation claim under Price _____ Waterhouse); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d __________ _________ ___________ Cir.) (noting that Price Waterhouse applies to mixed motive _________________ retaliation claims), cert. denied, 510 U.S. 865 (1993), overruled ____________ _________ on other grounds, Miller v. CIGNA Corp., 47 F.3d 586, 596 n.8 (3d ________________ ______ ___________ -4- Cir. 1995); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470-71 _________ ____________ (10th Cir. 1992) (applying Price Waterhouse to Title VII _________________ retaliation claim). Indeed, at least one court has analyzed retaliation claims in terms of Price Waterhouse even subsequent _________________ to the passage of the 1991 Act. See Veprinsky v. Fluor Daniel, ___ _________ _____________ Inc., 87 F.3d 881, 893 (7th Cir. 1996). However, neither the ____ Supreme Court nor this Circuit has held that Price Waterhouse _________________ applies to retaliation cases. However, Congress partially overruled Price Waterhouse ________________ in the 1991 Act by allowing a finding of liability and limited relief to plaintiffs in mixed motive cases. See Landgraf v. USI ___ ________ ___ Film Prods., 511 U.S. 244, __, 114 S. Ct. 1483, 1489 (1994). ___________ First, section 107(a) of that Act, codified at 42 U.S.C. 2000e- 2(m), determines that an employment practice is unlawful even if there are legitimate, as well as illegitimate, motivations for it.2 Next, section 107(b) of the Act, codified at 42 U.S.C. 2000e-5(g)(2)(B), establishes that if the plaintiff proves a violation of section 107(a), but the defendant demonstrates that it "would have taken the same action in the absence of the  ____________________ 2 Section 107(a) reads:  Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice. 42 U.S.C. 2000e-2(m). -5- impermissible motivating factor," id., the court may grant ___ declaratory and injunctive relief as well as attorney's fees, although it cannot grant other damages, such as monetary relief or reinstatement.3 Thus, where Price Waterhouse would not have ________________ held there was no liability and so would not have allowed any damages, the 1991 Act enables an employee in at least some mixed motive cases to receive certain limited relief. 2. Statutory Interpretation 2. Statutory Interpretation ________________________ Tanca argues that the new mixed motive damages provision applies to all forms of employment discrimination cases, including his own retaliation claim, and we should allow him the liability finding and remedies under section 107(b) the statute permits. We are accordingly faced with an issue of  ____________________ 3 Section 107(b) states, in relevant part, that [o]n a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court -- (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A). 42 U.S.C. 2000e-5(g)(2)(B). -6- statutory interpretation: do the mixed motive provisions of section 107(b) extend to Title VII retaliation claims brought under 42 U.S.C. 2000e-3? As always, we begin our analysis with the plain language of the statute. See, e.g., United States v. Ram rez- ___ ____ ______________ ________ Ferrer, 82 F.3d 1131, 1136 (1st Cir. 1996). By doing so, we ______ immediately encounter Tanca's fundamental problem: as a retaliation claim, his suit was brought under section 2000e-3,4 and although section 107(b) specifically addresses section 107(a), it makes no mention of section 2000e-3. Indeed, section 107(b) plainly states that it applies to "a claim in which an individual proves a violation under 2000e-2(m) [107(a)]." Section 107(a), in turn, specifies that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor."5 There is no reference to section 2000e-3 or  ____________________ 4 That section, which codifies section 704 of the 1964 Civil Rights Act, makes it an unlawful employment practice for an employer to discriminate against an employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. 2000e-3(a). 5 The parties do not make an argument on the basis of the "[e]xcept as otherwise provided in this subchapter" language of section 107(a), quoted in footnote 2, supra. We note that we do _____ not read the quoted language as expanding the scope of 2000e- 2(m) to include retaliation claims. Indeed, such an argument -7- retaliation claims in either provision. As the district court found, "nothing in the 1991 Act would appear to change any rule with respect to retaliation claims which existed prior to its enactment." Memorandum and Order, at 8; cf. Sunshine Dev., Inc. ___ ___________________ v. FDIC, 33 F.3d 106, 116 (1st Cir. 1994) ("[A] legislature's ____ affirmative description of certain powers or exemptions implies denial of nondescribed powers or exemptions."). On its face, then, the statute seems to express an intent not to preclude application of Price Waterhouse in the context of mixed-motive ________________ retaliation cases. See Reiss v. Dalton, 845 F. Supp. 742, 744 ___ _____ ______ (S.D. Cal. 1993) (rejecting application of section 107(b) to Title VII mixed motive retaliation claim as contrary to the plain meaning of the statute). Tanca argues otherwise. He maintains that reliance on the plain meaning of the statute would be inappropriate, because the "clear" legislative history demonstrates that Congress intended that other employment statutes modeled after Title VII adopt its new mixed motive analysis.6 See Greenwood Trust Co. v. ___ ___________________  ____________________ "would require us to assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message." Landgraf, 511 U.S. at 262. ________ 6 Tanca also seeks support from section 3(4) of the 1991 Act. That section states that one of the Act's purposes was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Although this language lends credence to the premise that Congress sought to overturn Price Waterhouse at least in part, it does not _________________ necessarily follow that Congress felt victims of discrimination could only be "adequate[ly] protect[ed]" if a new rule was established in relation to retaliation claims as well as the enumerated discrimination claims. -8- Massachusetts, 971 F.2d 818, 825 (1st Cir. 1992) ("[A] court must _____________ always hesitate to construe words in a statute according to their apparent meaning if to do so would defeat Congress's discovered intendment."), cert. denied, 506 U.S. 1052 (1993).  ____________ First, he argues that, because we "must presume that Congress knows of prior judicial or executive branch interpretations of a statute when it . . . amends a statute," Ram rez-Ferrer, 82 F.3d at 1137, we must presume that Congress ______________ knew of the judicial practice of borrowing the order and allocations of burdens of proof developed under Title VII and applying them to retaliation cases and other employment discrimination cases. See, e.g., Griffiths, 988 F.2d at 468. ___ ____ _________ Therefore, the argument goes, Congress' failure to amend all other employment discrimination statutes at the same time that it amended section 2000e-2 can mean that Congress presumed that the courts would continue to borrow and apply Title VII concepts, including the newly minted mixed motive damages provision. Indeed, there is some arguable support in the legislative history for his position. The House Report from the Judiciary Committee states that  [t]he Committee intends that . . . other laws modeled after Title VII be interpreted consistently in a manner consistent with Title VII as amended by this Act. For example, disparate impact claims under the ADA should be treated in the same manner as under Title VII.  H.R. Rep. No. 40(II), 102d Cong., 1st Sess. 4 (1991), reprinted _________ in 1991 U.S.C.C.A.N. 694, 697. __ -9- Assuming arguendo that Congress did intend the section 107 model to apply beyond Title VII, Tanca's argument still fails. Simply put, Tanca is not arguing that we borrow a Title VII concept and use it to interpret another statute, such as the ADA. Rather, he wants us to read one Title VII provision into another. He contends that Congress wanted us to do such borrowing, but it seems just as likely that because Congress knew of the judicial borrowing, in order to avoid such borrowing it specified which particular aspects of Title VII would be affected by referencing 107(a) in section 107(b). Tanca cites no legislative history that suggests otherwise.  This interpretation gains additional support from the fact that "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United ________ _____________ ______ States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)). ______ ____________ Section 102 of the 1991 Act, codified at 42 U.S.C. 1981a, provides for compensatory and punitive damages and specifies that its provisions will apply to complaining parties who bring an action under section 2000e-3 -- the retaliation section at issue here -- as well as 2000e-2. 42 U.S.C. 1981a(a)(1). Thus, because Congress addressed the retaliation section elsewhere in the 1991 Act, but chose not to do so in section 107(a) or (b), it would seem that "where Congress intended to address retaliation -10- violations, it knew how to do so and did so expressly."7 Reiss, _____ 845 F. Supp. at 745. Second, Tanca cites a series of additional passages from the legislative history in arguing that Congress intended that no part of the prior Price Waterhouse mixed motive ________________ analysis should remain in effect. As Tanca argues, statements such as the following could be read to support the premise that the 1991 Act should be read liberally as regards mixed motive cases: If Title VII's ban on discrimination in employment is to be meaningful, victims of proven discrimination must be able to obtain relief, and perpetrators of discrimination must be held liable for their actions. Price Waterhouse __________________ jeopardizes that fundamental principle. H.R. Rep. 40(I), 102d Cong., 1st Sess. 47 (1991), reprinted in ____________ 1991 U.S.C.C.A.N. 549, 585 (Education and Labor Committee Report).  We need not enter into his argument in detail, however, as our review of this and the other passages of the legislative history on which Tanca seeks to rely leads us to the conclusion that Congress' intent remains unclear regarding the application of the 1991 Act to Title VII mixed motive retaliation claims. Indeed, such claims are never directly addressed in the cited  ____________________ 7 Indeed, although section 107(b) does not reference retaliation claims, the already existing subsection immediately preceding it in Title VII does. See 42 U.S.C. 2000-e(5)(g)(2)(A). As ___ appellees note, the inclusion of retaliation claims in one subsection, juxtaposed with their omission in the next, tends to support the premise that Congress' omission of the claim in the latter provision was intentional. See Reiss, 845 F. Supp. at ___ _____ 745. -11- legislative history. "'Absent a clearly expressed legislative intention to the contrary [the] language [of a statute] must ordinarily be regarded as conclusive.'" Kaiser Aluminum & Chem. ________________________ Corp. v. Bonjorno, 494 U.S. 827, 835 (1990) (quoting Consumer _____ ________ ________ Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 ____________________ ___________________ (1980)). Therefore, as the plain meaning of the statute is clear, and this is not a statute whose "meanings . . . take on different colorations when read in their legislative and historical context," Greenwood Trust Co., 971 F.2d at 826, we ____________________ conclude that the mixed motive provisions of section 107 of the 1991 Act do not apply to Title VII retaliation claims brought under section 2000e-3.  We are conscious that our decision in this case goes against those of some federal courts that have looked at this issue. However, examination of the cases Tanca cites as support for his argument reveals that, although all of them would apply section 107(b) to Title VII mixed motive retaliation claims, and some of them examined the legislative history in drawing that conclusion, none of them weighed the plain language of the statute prior to borrowing the provision. See Beinlich v. Curry ___ ________ _____ Dev., Inc., 54 F.3d 772 (table), No. 94-1465, 1995 WL 311577 (4th __________ Cir. May 22, 1995) (unpublished disposition) (citing sections 107(b) and 2000e-3(a), without applying them, in retaliation claim); Woodson, 898 F. Supp. at 304-06 (pretext case); Hall v. _______ ____ City of Brawley, 887 F. Supp. 1333, 1345 (S.D. Cal. 1995); Jones- _______________ ______ Bell v. Illinois Dept. of Employment Sec., No. 95 C 948, 1995 WL ____ _________________________________ -12- 692321, at *6-*7 (N.D. Ill. Nov. 20, 1995).8 Indeed, the only case we found that examined the statute under traditional statutory interpretation methods supports our conclusions here. See Reiss, 845 F. Supp. at 744-45. Nothing in the cited cases or ___ _____ others we have examined leads us to question our conclusion. We also believe that the Price Waterhouse rule does apply to mixed ________________  ____________________ 8 The parties cite one case from this circuit. In Selgas v. ______ American Airlines, Inc., 858 F. Supp. 316 (D.P.R. 1994), the ________________________ district court was faced with a claim that the jury's answers to special interrogatories regarding Title VII retaliation and sex discrimination claims were contradictory. The employer, American Airlines, argued that the jury found that American would have made the same employment decisions even if Selgas' gender were not taken into account, and so American had an absolute defense under Price Waterhouse. The district court found that __________________ supplemental questions put to the jury remedied any inconsistencies in the verdict, but noted in passing that the 1991 Act had overruled Price Waterhouse. Id. at 318 n.2. The ________________ ___ district court cited Robinson v. Southeastern Pa. Transp. Auth., ________ ______________________________ 982 F.2d 892 (3d Cir. 1993), as support for that proposition. Examination of Robinson shows that the court there cited the 1991 ________ Act only for the proposition that "Title VII contemplates that a corporation may be liable for dismissing an employee when its motives contain a mixture of legitimate and illegitimate reasons." Id. at 899 & n.8. As the underlying dispute in ___ Robinson was tried prior to the 1991 Act's enactment, the court ________ did not apply it to the dispute. A panel of this court affirmed in part and vacated in part the district court's decision. See Kerr-Selgas v. American ___ ___________ ________ Airlines, Inc., 69 F.3d 1205 (1st Cir. 1995). The panel found _______________ that American had no alternative just cause to fire Selgas. Thus neither Price Waterhouse nor the 1991 Act was implicated. Id. at ________________ ___ 1210-11. In outlining American's failed argument, the panel cited Griffiths v. CIGNA Corp. for the proposition that section _________ ___________ 107(b)'s affirmative defense would apply to the retaliation claim. Id. at 1210; see Griffiths, 988 F.2d at 472. However, ___ ___ _________ the court in Griffiths neither applied section 107(b) to the _________ plaintiff's retaliation claim nor engaged in any statutory interpretation of its applicability, as that case was brought prior to the application of the 1991 Act. In the end, we find that, although there is some suggestion in Kerr-Selgas that the ___________ 1991 Act should apply to Tanca's claim, neither of the cases relied on for that proposition, nor Kerr-Selgas itself, supplies ___________ us with any reason to doubt the result reached here today.  -13- motive retaliation claims. Accordingly, we weigh the remainder of Tanca's arguments under Price Waterhouse. ________________ B. The Jury Instructions B. The Jury Instructions _____________________ Tanca's next argument centers on the jury instructions. Question four on the jury verdict form asked: "Would the employer have offered Mr. Tanca a promotion in Hyannis were it not for plaintiff's protected opposition?" The jury sent a note to the judge regarding question four as follows: Does the word "a" refer to any promotion in the Hyannis office or the specific UI position for which Mr. Tanca had applied? The court replied that  [t]he words "a promotion" in Question 4 refers [sic] to the specific UI position for which Mr. Tanca had applied. The jury then returned a verdict answering question four in the negative, finding that DET would not have offered Tanca the UI position in Hyannis, even without the illegitimate motivations. Tanca argues now that the UI position was not the only Hyannis position that the jury should have considered. In fact, he points out, after naming the new Hyannis UI, DET created a new manager position below the UI in Hyannis, which would also have been a promotion for Tanca. This position was not offered to Tanca. Based on this, Tanca claims DET did not satisfy its burden of proof under Price Waterhouse in that it did not prove ________________ that it would have come to the same decision even if it had not taken the unlawful motive into account. See Price Waterhouse, ___ _________________ 490 U.S. at 244. The pertinent decision here, he contends, was -14- DET's choice to offer him a position in New Bedford, and not one in Hyannis. While the jury found that DET would not have offered him the Hyannis UI position, it did not find that DET would not have offered him the new manager position either, he maintains, because it was not asked. Therefore, he continues, the court should have responded to the jury's inquiry by telling them that question four referred to any promotion in the Hyannis office. ___ Since it did not, he concludes, DET has not met its burden under Price Waterhouse. Tanca acknowledges that he did not object to ________________ the district court's response, but contends that it was not his duty to do so: as DET had to prove each element of its defense, he argues, it should have objected. Our review of the record below, however, reveals no mention of the new manager position in Tanca's Complaint, Opposition to Defendants' Motion for Summary Judgment, Pre-trial Memorandum, Trial Brief, Motion for a New Trial, or Opposition to Defendants' Motion for Judgment. Nor did Tanca object to either the jury instructions or the judge's answer to the jury's question on these grounds. Accordingly, we find that by failing to squarely raise any question regarding the new manager position before the district court, Tanca has waived the opportunity for argument on that point here. See Timberland Design v. First ___ _________________ _____ Serv. Bank for Sav., 932 F.2d 46, 51 (1st Cir. 1991) ("It is ____________________ clearly established that arguments not raised at the district court level will not be considered on appeal."); see also _________ Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10 (1st Cir. 1991); _________ __________________ -15- Nimrod v. Sylvester, 369 F.2d 870, 872 (1st Cir. 1966). Even ______ _________ were we not to find waiver, Tanca's position would fail. Simply put, we cannot see how the trial court could have felt that anything besides the UI position was at issue.9 The district court, therefore, did not err in its answer to the jury's question, as the pertinent issue was not whether any Hyannis ___ position would have been offered Tanca, but whether the UI position would have been offered. CONCLUSION CONCLUSION In view of the above the judgment of the district court is affirmed.  ________  ____________________ 9 For example, in his Pre-Trial Memorandum, Tanca listed only two contested issues of fact: A. The reasons why Mr. Tanca was not awarded the position of U. I. Manager in Hyannis, Massachusetts. B. Mr. Tanca's damages. See Correa v. Hospital San Francisco, 69 F.3d 1184, 1195 (1st ___ ______ _______________________ Cir. 1995) (noting that failure to raise an issue in the final pretrial order generally constitutes waiver). -16-