DECISION
This is an appeal from a decision of the Rhode Island Commission for Human Rights (Commission). Brown University (appellant) seeks reversal of the Commission's decision that the appellant had discriminated against Charlotte King (complainant) on the basis of sex. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
Facts/Travel
The complainant worked for the appellant as a project inspector and materials supervisor from June 1989 until August 24, 1990, when the complainant was layed off. In October 1990 the complainant applied to the appellant for the posted position of carpenter. According to the appellant's internal hiring policies, the complainant was entitled to a preference both because of her status as an internal candidate and as a female candidate applying for a position underutilized by females. The complainant was considered an internal candidate because she had been laid off less than 6 months previous to her application for the position of carpenter. A minority or internal candidate is given a preference over an equally qualified non-minority external candidate.
The complainant was granted an interview with Mark Eddleston (Eddleston), the supervisor of Division 1 of Plant Operations and responsible for making the hiring decision for the carpenter position. Eddleston stated that he probably would not have given the complainant an interview if Donald Wilder, Director of Plant Operations, had not asked Eddleston to interview her. At the interview, Eddleston asked the complainant a series of questions which differed slightly from those asked of the other applicants. The interview with the complainant lasted about 10 to 15 minutes, while the interview with the selected applicant, Charles Greer (Greer), lasted 25 minutes. Eddleston refused to clarify questions. He also did not adhere to his general policy of making applicants feel at ease and asking applicants general questions about their experience.
After the interview, Eddleston checked the references and work history of the complainant but did not check the references of Greer. However, Eddleston did not call the complainant's most recent supervisor, Kurt Last, who worked for the appellant. Eddleston did not treat the complainant as an internal applicant. In discussing the complainant's application with David Bishop (Bishop), supervisor of Division 6 of Plant Operations, Eddleston told Bishop that he "didn't want a woman in the shop." Eddleston selected Greer for the carpenter position, and Greer started work on December 18, 1990. Eddleston had ranked the complainant 6th out of 12 applicants. Eddleston was impressed with Greer's knowledge of carpentry skills. Eddleston stated that he did not select the complainant because he could not contact two previous employers who had gone out of business, the complainant answered only 50 percent of the interview questions correctly, and she did not have as much experience as that of the other applicants. On February 26, 1991, the complainant inquired whether the carpenter position had been filled. The complainant was informed that another applicant had been selected.
On October 4, 1991, the complainant filed a charge against the appellant for unlawful discrimination with the Rhode Island Commission for Human Rights. The Preliminary Investigating Commissioner found probable cause to believe that the appellant had unlawfully denied employment to the complainant on the basis of sex pursuant to § 28-5-7. The Commission held hearings on 17 dates from April 7, 1993, to March 16, 1994. In a decision entered on August 4, 1995, the Commission found that the appellant had "discriminated against the complainant with respect to hire because of her sex." The Commission found that the reasons proffered for not hiring the complainant were a pretext for discrimination. The Commission found evidence of sex discrimination in the statement made by Eddleston to Bishop, in the way Eddleston treated the complainant differently in the selection process, and in the failure of the appellant to adhere to its internal policies on preferences for internal female applicants. The Commission found that the selected applicant Greer had more experience in carpentry. However, the Commission found that by factoring in the complainant's status as both a female and internal applicant, the complainant was a better qualified applicant than Greer. The Commission found that the appellant had committed an unlawful employment practice in violation of § 28-5-7.
The Commission ordered the appellant to award the complainant the next available carpenter position. The Commission awarded the complainant the present salary for the carpenter position until the complainant is offered a carpenter position with the appellant. This "front pay" does not have a specific time limit. The Commission also awarded back pay to the complainant from the time period of December 18, 1990, until the date of the order.
On August 30, 1995, the appellant filed the instant appeal. Appellant contends that it did not discriminate against the complainant on the basis of sex because it selected an applicant with better qualifications. The appellant further argues that the Commission erred in finding that the proffered reasons for not hiring the complainant were a pretext for discrimination. Finally, the appellant argues that the Commission's award of open-ended front pay was not supported by the evidence of record. The Commission and the complainant respond that substantial evidence of record existed to support the Commission's finding of an unlawful employment practice.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g) which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error or law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflict of Interest Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence.Rhode Island Public Telecommunications Authority, et al. v. RhodeIsland Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
Determining the Basis for Discrimination
The appellant argues that it selected an applicant with better qualifications than the complainant. The appellant asserts that it chose the selected applicant because he had more practical experience than the complainant. The appellant further contends that the Commission erroneously applied the appellant's affirmative action program by giving weight to the complainant's internal female status in assessing job qualifications. The appellant states that internal and female candidates are given a hiring preference only if they are already equally qualified to an external non-minority applicant. Additionally, the appellant states that the complainant did not demonstrate that the above offered reason for not hiring the complainant was a pretext for discrimination.
The Commission and complainant respond that the Commission had substantial evidence of record which demonstrated that the proffered reason for not hiring the complainant was a pretext for discrimination. The Commission and complainant state that the preference accorded to internal applicants and the appellant's goal of recruiting women for under-represented departments were not applied in the instant matter. The Commission and complainant contend that such a deviation from the appellant's normal standards indicates that the appellant's reasons were merely a pretext for discrimination. The Commission and complainant also contend that the statements and actions of Eddleston also indicate that the appellant unlawfully discriminated against the complainant on the basis of sex.
Under § 28-5-7 (1)(i) "[i]t shall be an unlawful employment practice . . . [f]or any employer . . . [t]o refuse to hire any applicant for employment because of his or her . . . sex. . . ." Our courts look to the decisions of federal courts under Title VII of the Civil Rights Act of 1964 for assistance in determining whether a discriminatory practice has occurred under state law. Newport Shipyard, 484 A.2d at 897-898. In analyzing a discrimination case, a court must determine whether it should be analyzed as a "pretext" case or a "mixed motive" case. Engstrandv. Pioneer Hi-Bred Intern. Inc., 946 F. Supp. 1390, 1397 (S.D. Iowa 1996); See also, Jackson v. Georgia-Pacific Corp.,685 A.2d 1329, 1338 (N.J. Super. A.D. 1996).
The standard for a "pretext" case is set forth in McDonnellDouglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In a pretext case, the complainant must first prove a prima facie case of discrimination; then the burden shifts to the defendant to articulate a non-discriminatory reason for rejecting the applicant. St. Mary's Honor Center, 113 S.Ct. at 2749. If the defendant carries its burden, the complainant has an opportunity to prove that the defendant's reasons were not its true reason but a pretext for discrimination. Id. at 2752. The burden of persuading the trier of fact that the defendant engaged in intentional discrimination remains with the complainant at all times. Id. at 2753.
The standard for a "mixed motive" case was first set out inPrice Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). A "mixed motive" case is present "[w]here a decision was the product of a mixture of legitimate and illegitimate motives. . . ." Price Waterhouse, 490 U.S. at 247. In such a "mixed motive" case the analytical framework set out for "pretext" cases in McDonnell Douglas, St. Mary's HonorCenter, and Texas Dept. of Community Affairs v. Burdine,450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) is not appropriate.Price Waterhouse, 490 U.S. at 247. In Price Waterhouse, a female candidate for partner was denied a partnership position because of deficient interpersonal skills and also on the basis of sex.Id. at 237-238. The court pointed out that under Title VII "gender must be irrelevant to employment decisions" and gender need not be the sole motivating factor in order for a violation of Title VII to occur. Id. at 240-241. Similarly, under Rhode Island State law "[a]n unlawful employment practice is established in an action or proceeding under this chapter when the complainant demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though the practice was also motivated by other factors. Nothing contained herein shall be construed as requiring direct evidence of unlawful intent or as limiting the methods of proof of unlawful employment practices under § 28-5-7." Section 28-5-7.3.
In the instant case, the Commission analyzed the matter under the "pretext for discrimination" framework. The Commission found that the discriminatory statement of Eddleston, the conduct of Eddleston in the selection process, and the failure of the appellant to adhere to its affirmative action policies demonstrated that the appellant's reasons for not hiring the complainant were a pretext for discrimination.
However, a review of the record indicates that the Commission misconstrued the appellant's internal affirmative action policies. Under the "Points to remember in hiring" document contained in the supervisors' hiring package it is stated that:
 "Internal applicants should be given preference in hiring.
 You should be aware of the minority composition of your office, should actively recruit women and minorities, and if a minority and a non-minority are equally qualified, should give preference to the minority. If an external minority and an internal non-minority are equally qualified, discuss the situation with your staffing representative." Complainant's Exhibit 17.
This document specifically mentions that the preference is used when the two applicants are equally qualified. If a female applicant applies for a job in a department which underutilizes females, she is a minority applicant. The hiring policy clearly states that such a female applicant will get a preference in hiring only if she is equally qualified with the non-minority applicant. The "Points to remember in hiring" document also indicates that internal applicants should be given a preference. The document illustrates that the internal applicant preference works in the same manner as the minority preference when it provides the example of two equally qualified applicants, one a minority applicant and the other an internal applicant. The "Points to remember in hiring" document gives the minority and internal preferences equal weight in stating that the supervisor should consult a staffing representative in the final decision. The testimony of Sheila Curran, the appellant's Director of Employment and Organizational Development, confirmed that an internal applicant, like a minority applicant, would be given a preference if the applicant was "as qualified as the best person in the [applicant] pool. . . ." (Transcript June 10, 1993 at 65)
Instead of independently assessing the qualifications of the complainant and the selected applicant, then applying the preference if they were equally qualified, the Commission incorrectly included the complainant's status as a female and internal applicant in determining the complainant's qualifications. The appellant's policy does not give extra value to the qualifications of a minority or internal applicant but rather provides a preference in hiring those minority and internal applicants if their qualifications are equal to those of a non-minority external applicant.
This Court finds that the evidence supports the conclusion that the complainant and selected applicant were not equally qualified. The Commission conceded as much when it found that "Mr. Greer had more practical experience in carpentry than the complainant. . . ." (Commission's Decision and Order at 8). The Commission found that "[i]f the respondent's standards were based solely on experience, an unbiased supervisor might have selected Mr. Greer over the complainant." (Commission's Decision and Order at 12.) The Commission then went on improperly to include the complainant's status as a female and internal applicant in assessing her qualifications. Without incorrectly examining the complainant's status as a female or internal applicant, the evidence of record supports the appellant's decision to select Greer for the carpenter position based on Greer's years of experience as a carpenter and his recent experience in carpentry work. (See Commission's Decision and Order at 12.) The appellant had a legitimate basis to select Greer as the more-qualified applicant.
This Court finds that the appellant properly adhered to its own affirmative action policy. Because the complainant and selected applicant were not equally qualified, the appellant did not have to apply a preference under its affirmative action policy. In the instant matter, the appellant's implementation of its affirmative action policy cannot serve as evidence of a discriminatory practice.
Yet, there is other evidence which supports the conclusion that the appellant committed a discriminatory practice. Bishop testified that Eddleston told him that Eddleston did not want a woman in his office. Bishop testified that Eddleston was referring specifically to the complainant's application. Bishop's testimony did not waver under cross-examination. The Commission found the testimony of Bishop to be credible. This court will not substitute its judgment for that of the Commission on the issue of witness credibility. Costa, 543 A.2d at 1309. In addition, Eddleston's actions in the selection process toward the complainant also provided evidence of sex discrimination. Even though the complainant was a well-qualified internal applicant, Eddleston testified he probably would not have interviewed the complainant if Wilder had not requested that he interview her. (Transcript, June 14, 1993 at 113-114.) Eddleston conducted a shorter interview with the complainant than with most of the other applicants and did not ask the same type of questions. (Commission's Decision and Order at 11.) Eddleston checked the references of the complainant but did not check Greer's references. (Commission's Decision and Order at 11-12). Eddleston challenged the complainant's status as an internal applicant, even though the internal candidate form was sent through Human Resources. (Commission's Decision and Order at 11.) This Court finds that the Commission had substantial evidence to conclude that the appellant committed a discriminatory practice based on sex.
In reviewing the above evidence, this Court is confronted with a classic mixed motive case. The appellant had both legitimate and illegitimate reasons for rejecting the complainant's application for the carpentry position. The appellant selected the best qualified individual for the position (legitimate reason) but also had a discriminatory animus on the basis of sex (illegitimate reason) in rejecting the complainant. Accordingly, the appropriate analytical framework for the instant case is the mixed motive analysis of the Price Waterhouse line of cases.
Mixed Motive Threshold
In a mixed motive case the complainant has "the threshold burden of showing that an illegitimate criterion was a motivating factor . . ." in the employer's decision not to hire the complainant. Cram v. Lamson Session Co., 49 F.3d 466, 471 (8th Cir. 1995). In order to make a threshold showing the complainant must present "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision . . ." not to hire the complainant. Ostrowski v.Atlantic Mut. Ins. Co., 968 F.2d 171, 182 (2nd Cir. 1992); Seealso, Jackson, 685 A.2d at 1339 (there must be "evidence which can be fairly said to directly reflect unlawful bias . . .").
In the instant case, there is direct evidence of a discriminatory attitude by a decision maker sufficient to infer that discrimination on the basis of sex was a motivating factor in the decision not to hire the complainant. Eddleston told a colleague that he did not want a woman in his department. Eddleston's conduct in the selection process toward the complainant and in his interview with the complainant was markedly different from his conduct toward the other applicants. Eddleston essentially had the authority to choose who would work in his department. This Court finds that the complainant met her burden in showing that discrimination on the basis of sex was a motivating factor for the appellant's decision not to hire the complainant.
Remedy
On the federal level, an employer can overcome the complainant's threshold showing of discrimination as a motivating factor "if it can prove that, even if it had not taken gender into account, it would have come to the same decision regarding a particular person." Price Waterhouse, 490 U.S. at 242. If an employer succeeds in proving the above, under current federal law the complainant cannot recover monetary damages but can still get injunctive relief. See generally Tanca v. Nordberg, 98 F.3d 680
(1st Cir. 1996).
Rhode Island state law diverts from the federal law at this point. Section 28-5-7.3 specifies that an unlawful employment practice has occurred if sex discrimination was a motivating factor. Even if the practice was motivated by other legitimate factors, a violation of § 28-5-7 has still occurred if sex discrimination is one of the motivating factors. Section28-5-7.3. However, under Rhode Island law (pursuant to an unlawful discrimination under § 28-5-7.3) if the employer proves that it would have made the same decision regardless of the sex discrimination, the Commission's award of damages may differ from a "pretext" case. "[T]he Commission need not award hiring, reinstatement, or upgrading with back pay if the respondent establishes by a preponderance of the evidence that it would have taken the same action in the absence of any unlawful motivating factor." Section 28-5-24 (a).
In the instant case, the record clearly establishes that the appellant would have hired Greer anyway based on Greer's superior qualifications, regardless of the sex discrimination. The evidence of record further indicates that the Commission's remedy of awarding the complainant the next available carpentry position was not appropriate. The purpose behind awards which order the employer to hire the complainant is to make the complainant whole. Selgas v. American Airlines Inc., 104 F.3d 9, 12 (1st Cir. 1997). Remedies in discrimination cases are designed "to bring the plaintiff to the position which s/he would have occupied but for the illegal act(s)." Id. The Commission's award of the next available carpentry position and front pay provides the complainant with a "windfall," rather than placing her in the position she would have gained but for the illegal conduct. The complainant would not have been selected for the position on merit alone, as the selected applicant Greer was more qualified. The remedy ordered by the Commission is not specifically tailored to redress the discrimination committed by the appellant. "[C]ompensation is only due for the ravages of illegal discrimination." Thompson v. Sawyer, 678 F.2d 257, 290 (D.C. Cir. 1982). The complainant cannot recover lost wages if she would not have been hired absent sex discrimination. Ostroff v. EmploymentExchange Inc., 683 F.2d 302, 304 (9th Cir. 1982). Here, the complainant cannot receive the carpentry position, front pay, or lost wages in damages because she was significantly less qualified than Greer and would not have been hired absent the discrimination. Based on the evidence of record, the Commission's ordered remedy was clearly erroneous.
Conclusion
This Court affirms the Commission's decision that the appellant discriminated against the complainant with respect to hire because of her sex. There is reliable, probative and substantial evidence of record to support the Commission's decision. The decision was not arbitrary and capricious, nor an abuse of discretion. This Court is further satisfied that the Commission's finding of a discriminatory practice did not violate constitutional or statutory provisions, was not made upon unlawful procedure, and was not affected by other error of law such that substantial rights of the appellant have been prejudiced.
This Court reverses the Commission's order awarding the complainant the next available carpentry position and awarding the complainant damages, as these remedies were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Because the Commission decided this case under the "pretext" analysis, this matter is remanded for the Commission to reassess damages in light of this Court's finding of an unlawful practice pursuant to § 28-5-7.3.
The Commission's decision finding a discriminatory practice is affirmed; the Commission's award of damages is reversed and remanded for reassessment.
Counsel shall prepare the appropriate judgment for entry.