Pape v. Bridgton Hospital, CV-09-23 (Superior Ct. Cumberland)

A jury-waived trial in the above-captioned case was held on November 16-17, 2009, followed by summations on November 25, 2009.

Pape makes two claims: (1) that she was subjected to a hostile work environment based on a co-worker's animus against her Native American ancestry and (2) that she was ultimately terminated in retaliation for her complaints to her supervisors.

## 1. Hostile Work Environment

On the hostile work environment claim, plaintiff must establish the factors set forth in Watt v. Unifirst Corp., 2009 ME 47 ¶¶ 22, 26, 969 A.2d 897, 903-04: (1) that she is a member of a protected class; (2) that she was subjected to harassment; (3) that the harassment was based upon her Native American ancestry; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the conduct directed at her was both subjectively and objectively offensive; and (6) that there is a basis for employer liability in that the employer either knew or should have known about the conduct.

On this issue the court makes the following findings of fact:

Plaintiff Cynthia Pape began working as a patient service representative (PSR) at Bridgton Internal Medicine, a physician practice group within Bridgton Hospital, in late August 2007. At some point beginning approximately a month and a half later, after Columbus Day, she began experiencing difficulties with one other employee, a PSR named Carol LaBerta, who according to Pape began refusing to talk to her and made demeaning comments about her. Those comments were to the effect that Pape was stupid and did not know what she was doing.

Pape ascribed this to her Native American ancestry and to LaBerta's alleged unhappiness about a comment Pape had made about Columbus Day. However, none of LaBerta's derogatory comments mentioned Pape's Native American ancestry.[1] While the court agrees with counsel for plaintiff that racial or ancestral bias need not be overtly displayed and may be proven by circumstantial evidence, plaintiff ultimately bears the burden of proof that any harassment was based at least in part upon ancestry. Pape has not carried that burden here. Among other things, LaBerta testified that her youngest son had some Native American blood, and Pape testified that LaBerta made similarly demeaning comments about another employee who was not Native American.

Plaintiff also failed to prove that LaBerta's conduct was sufficiently severe or pervasive so as to alter the conditions of Pape's employment and create an abusive work environment. The court finds that LaBerta and Pape rubbed each other the wrong way and that LaBerta was consistently antagonistic and rude to Pape. However, LaBerta was the only co-worker who Pape testified was hostile, and although one

---

[1] Although plaintiff also believes that LaBerta made one comment about how Italians had to stick together that by implication was derogatory about Native Americans, the court does not find that the alleged comment in question was accurately reported.

hostile co-worker can create a hostile environment, see Watt, 2009 ME 47 ¶¶5-17, 989 A.2d at 899-901, the conduct ascribed by Pape to LaBerta fell very far short of that ascribed to the hostile co-worker in Watt.

Lastly, even assuming that LaBerta's animus had been based on Pape's Native American ancestry, there is an issue whether Pape's supervisors knew or should have known that the difficulties between Pape and LaBerta bore any relationship to Pape's status as a person of Native American ancestry. Because plaintiff did not meet her burden of proof that she experienced harassment based on ancestry and because she did not establish by a preponderance of the evidence that the harassment was severe or pervasive enough to alter the conditions of her employment and create an abusive work environment, the court does not need to reach this issue with respect to Pape's hostile work environment claim. This issue will, however, be considered below in connection with plaintiff's retaliation claim.


2. Retaliation

Under Maine law, it is unlawful to discriminate in any manner against an employee because the employee opposed a form of unlawful discrimination or filed a charge under the Maine Human Rights law. 5 M.R.S. § 4572(1)(E). Pape was terminated from employment at Bridgton Internal Medicine on November 27, 2009. Whether or not Pape was actually being subjected to a hostile work environment based on her ancestry, it would potentially constitute unlawful retaliation under § 4572(1)(E) if Pape had complained in good faith about a hostile work environment based on ancestry and if those complaints were a motivating factor for the employer's decision to terminate her.

Pape did discuss with her supervisors on more than one occasion that she believed LaBerta was being rude and antagonistic toward her, and Pape's supervisors had independently observed that Pape and LaBerta did not get along. However, that does not establish that Pape's supervisors knew or should have known that Pape was raising a complaint that she was being subjected to discrimination based on her ancestry. The Maine Human Rights Act does not apply just because an employer becomes aware of problems between co-workers even if those problems lead to outright hostility – so long as the hostility does not involve race or ancestry or any other protected status.

Contrary to her testimony at trial, Pape's contemporaneous notes of her experience at Bridgton Internal Medicine state that she "never" mentioned to her supervisors her feeling that LaBerta's actions "were directed toward my race." Nevertheless, plaintiff's counsel forcefully argues that Pape's supervisors should have known that Pape believed she was experiencing harassment based on her ancestry because other employees had reported to them, late in Pape's employment, that Pape made statements about talking to an attorney.

This is a 50-50 issue. On the one hand, information that Pape was consulting an attorney or that she was talking about consulting an attorney could well have alerted Pape's supervisors that Pape believed she was being subjected to unlawful discrimination. On the other hand, one of the supervisors testified that she thought it

2

would have been out of place for her to ask Pape what she was discussing with an attorney.[2] More significantly, Pape had advised Tami Kelley early in Pape's tenure at Bridgton Internal Medicine that Pape believed she had been subjected to discrimination based on her ancestry in a previous job. Kelley could reasonably have assumed that if Pape felt this was happening again, she would come right out and say so.[3] On a 50-50 call, plaintiff falls short because she bears the burden of proof.

The court agrees that if Pape's supervisors knew or should have known that Pape's complaints involved a claim of harassment based on ancestry, Pape proved that her complaints were a motivating factor for her termination. By the end, Pape's relationship with certain other employees, not just LaBerta, had become uncomfortable for a variety of reasons, including occasional cryptic comments by Pape to all the employees in her vicinity that she was consulting an attorney. This was one of the issues that Pape's supervisors cited at the time of Pape's termination.

The court does not mean to suggest that Bridgton Internal Medicine could not have handled the problems between Pape and LaBerta more skillfully. Nor does the court mean to suggest that the evidence in favor of the defendant was in any way overwhelming. In his summation, plaintiff's counsel pointed out certain inconsistencies in the evidence and offered a coherent theory by which the court could have found in favor of the plaintiff on both her claims. Ultimately, however, the plaintiff bore the burden of persuading the court that it was more likely that not that she was subjected to a work environment sufficiently hostile as to alter the terms and conditions of her employment, that the hostility was based on her Native American ancestry instead of personality differences, and that her supervisors knew or should have known that she was complaining to them about unlawful discrimination, as opposed to complaining about a bad relationship with a co-worker based on mutual dislike. At best, the evidence was equally divided on all those issues, necessitating judgment for defendant.

Finally, the court also finds that even if Pape's complaints to her supervisors should have been understood to be raising claims of unlawful discrimination and were among the motivating factors for her discharge, it is more likely than not that Pape would have been terminated even in the absence of those complaints. See Tanca v. Nordberg, 98 F.3d 680, 681, 684 (1st Cir. 1996) (in a mixed motive retaliation case employer may assert an affirmative defense that it would have taken the same action regardless). On this issue the court found that the testimony of Jillian Kellough, one of Pape's supervisors who no longer works at Bridgton Internal Medicine and who was in fact terminated some months after Pape, was credible.

---

[2] There is some basis for this concern. Depending on how such an inquiry was phrased and depending on how it might later be characterized, an employer could be faulted for making an inquiry that could be perceived as a demand that one if its employees divulge protected attorney-client communications.

[3] Pape had mentioned to one or two co-workers that she thought LaBerta's attitude might have stemmed from Pape's Native American ancestry. The court does not find that Pape's supervisors were made aware of this supposition.

3

The entry shall be:

For the reasons set forth above, judgment shall be entered for the defendant on both counts of the complaint. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December ____/____, 2009

Thomas D. Warren
Justice, Superior Court

4

CYNTHIA PAPE VS BRIDGTON HOSPITAL
UTN:AOCSsr  -2009-0003306                    CASE #:PORSC-CV-2009-00023
-----------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE      DATE
01 0000002578 ATTORNEY:POULIN, MICHAEL
ADDR:95 MAIN STREET PO BOX 3200 AUBURN ME 04212-3200
    F FOR:BRIDGTON HOSPITAL                 DEF        RTND   02/19/2009

02 0000009295 ATTORNEY:FRENETTE, MARC N
ADDR:95 MAIN STREET PO BOX 3200 AUBURN ME 04212-3200
    F FOR:BRIDGTON HOSPITAL                 DEF        RTND   02/19/2009

03 0000009294 ATTORNEY:LORANGER, GUY D
ADDR:110 MAIN ST., SUITE 1520 SACO ME 04072
    F FOR:CYNTHIA PAPE                      PL         RTND   01/12/2009


                        *More Attorneys*
          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.

CYNTHIA PAPE VS BRIDGTON HOSPITAL
UTN:AOCSsr  -2009-0003306                      CASE #:PORSC-CV-2009-00023
--------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE       DATE
04 0000004352 ATTORNEY:MALLOY, MICHAEL S
ADDR:95 MAIN STREET PO BOX 3200 AUBURN ME 04212-3200
    F FOR:BRIDGTON HOSPITAL                    DEF        RTND   10/26/2009




          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.