**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2013

No. 12-10642

Lyle W. Cayce
Clerk

ANTHONY CARTER,

Plaintiff - Appellant

v.

LUMINANT POWER SERVICES COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Title VII of the Civil Rights Act of 1964 proscribes several types of discrimination. Included among them is "mixed motive" discrimination: discrimination motivated in part, but not entirely, by an impermissible factor. An employer found to have acted with such a motivation can limit a plaintiff's recovery by demonstrating that it would have made the "same decision" regardless. But under 42 U.S.C. § 2000e-5(g)(2)(B)(i), the employer may still need to reimburse the plaintiff's costs and attorney's fees. The parties dispute whether that cost- and fee-shifting provision applies to mixed-motive *retaliation* claims. We hold that it does not.

No. 12-10642

## I.

Anthony Carter worked for Luminant Power Services Company. He later sued Luminant in federal district court, alleging several unlawful employment practices.[1] As relevant here, Carter claimed that Luminant disciplined him in retaliation for his complaints of racial discrimination.[2]

A jury agreed with Carter—in part. It found that Carter's complaints motivated Luminant's decision to discipline him. The jury also found, however, that Luminant proved, by a preponderance of the evidence, that it would have made the "same decision" irrespective of his complaints.

The district court entered judgment in Luminant's favor and taxed all costs against Carter. Carter moved to retax costs and sought an award of attorney's fees, relying on § 2000e-5(g)(2)(B)(i). The district court concluded that the provision was inapplicable to "a mixed-motive retaliation claim" like Carter's and denied his motion. Carter appeals.

## II.

Carter identifies only one statutory provision that might justify awarding him attorney's fees and costs: the aforementioned § 2000e-5(g)(2)(B)(i). We review *de novo* the district court's interpretation of that provision.[3]

---

[1] *See* 42 U.S.C. § 1981 (Civil Rights Act of 1866); *id.* § 2000e-2, *et. seq.* (Title VII of the Civil Rights Act of 1964).

[2] The parties stipulated that Title VII protected Carter's decisions to complain. The district court instructed the jury that Luminant's disciplining of Carter was an adverse employment action. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse.").

[3] *See In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) ("[T]his Court reviews a district court's statutory construction de novo."). Carter contends that he should prevail because Luminant represented to the district court that, if Luminant made out a same-decision defense, § 2000e-5(g)(2)(B)(i) would apply to Carter's claim. Carter cites no authority to support this contention. *Cf.* FED. R. APP. P. 28(9)(A) ("[T]he argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies."). "In any case, it is well settled that a court is not bound to accept

2

No. 12-10642

**A.**

Our analysis begins with the statutory text.[4] In relevant part, Section 2000e-5(g)(2)(B)(i) states:

> On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court . . . may grant . . . attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title.[5]

By its plain terms, then, the fee- and cost-shifting provision in § 2000e-5(g) applies only to violations of § 2000e-2(m).

As relevant here, Section 2000e-2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."[6] Section 2000e-2(m), does *not* provide, however, that an employment practice motivated in part by *retaliation* is unlawful.

This omission is of great import. Title VII contains both a "core antidiscrimination provision" and an "antiretaliation provision."[7] Congress divided these provisions across separate sections. Section 2000e-2(a) proscribes discrimination against an individual "because of such individual's race, color, religion, sex, or national origin."[8] Section 2000e-3(a)—the anti-retaliation

---

as controlling stipulations as to questions of law." *Equitable Lfe Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 983 (5th Cir. 1977). And Carter does not even use the phrase "estoppel," let alone contend that estoppel is appropriate here.

[4] *See, e.g.*, *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 175 (2009).

[5] 42 U.S.C. § 2000e-5(g)(2)(B)(i).

[6] *Id.* § 2000e-2(m).

[7] *Burlington*, 548 U.S. at 61–62.

[8] 42 U.S.C. § 2000e-2(a) (codifying Section 703(a)).

provision—proscribes discrimination against an individual because "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[9] Section 2000e-2(m) conspicuously tracks the impermissible factors set out in § 2000e-2(a), while making no mention of § 2000e-3(a). From this omission, we infer that Congress did not intend for § 2000e-2(m) to reach retaliation claims.[10]

Other elements of the statutory scheme confirm our understanding. Section 2000e-5(g)(2)(A) refers to "discrimination on account of race, color, religion, sex, or national origin *or* in violation of section 2000e-3(a)"[11]—implying that discrimination "on account of" race is distinct from retaliation. And § 1981a authorizes damages for certain claims brought under § 2000-e(2) *or* § 2000-e(3), again suggesting that the sections target different types of mistreatment.[12]

Because we are convinced that § 2000e-2(m) does not encompass retaliation claims, we join several other Circuits in holding that § 2000e-5(g)(2)(B)(i) does not apply to mixed-motive retaliation claims.[13]

---

[9] *Id.* § 2000e-3(a) (codifying Section 704(a)).

[10] *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1076 (2011) ("*Expressio unius, exclusio alterius.*").

[11] 42 U.S.C. § 2000e-5(g)(2)(A) (emphasis added). It is true, of course, that the quoted language existed before the Civil Rights Act of 1991 added §§ 2000e-2(m) and 2000e-5(g)(2)(B)(i) to Title VII. But Congress was almost certainly aware of the quoted language in 1991—both because it then added § 2000-e(g)(2)(B)(i) and because the 1991 Act "designat[ed the quoted language] as paragraph (2)(A)," rather than simply the "fourth sentence" of § 2000e-5(g). Pub. L. No. 102-166, 105 Stat 1071.

[12] *See id.* § 1981a(a)(1) (authorizing damages for certain claims brought under "section 703" or "704 . . . (42 U.S.C. 2000e-2 or 2000e-3)").

[13] *See Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000); *Norbeck v. Basin Elec. Power Co-op.*, 215 F.3d 848, 852 (8th Cir. 2000); *McNutt v. Bd. of Trustees of Univ. of Illinois*, 141 F.3d 706, 707–09 (7th Cir. 1998); *Tanca v. Nordberg*, 98 F.3d 680, 682–85 (1st Cir. 1996); *see also Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 552 n.7 (4th Cir. 1999) (holding § 2000e-2(m) inapplicable to Title VII retaliation claims); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 935 (3d Cir. 1997) (same); *cf. Metoyer v. Chassman*, 504 F.3d 919, 934 (9th Cir. 2007);

4

**B.**

Carter disagrees. He reasons that "[h]ere, race was a motivating factor because Carter's protected activity involved complaints about *race* comments and incidents and also filing a charge of *race* discrimination with the [Equal Employment Opportunity Commission (EEOC)]." In essence, his point is that retaliation for a complaint of race discrimination makes race a "motivating factor for [the retaliatory] employment practice"[14]—bringing it within the ambit of § 2000e-2(m), and thus §2000e-5(g)(2)(B)(i).

This argument has some force. In recent years, the Supreme Court has repeatedly held that language to the effect of "discrimination on the basis of [a characteristic]" sweeps in retaliation arising from *complaints of* discrimination based on that characteristic.[15] Yet all but one of those cases involved broadly phrased prohibitions—prohibitions in statutes that did not mention retaliation in one place but omit it from the provision at issue.[16]

In *Jackson v. Birmingham Board of Education*,[17] for example, the Supreme Court held that "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination,' 'on

---

*Lewis v. Young Men's Christian Ass'n*, 208 F.3d 1303, 1304 (11th Cir. 2000).

Although we respect the contrary view set out in the EEOC's Compliance Manual, *see* EEOC Compl. Man., § 8-II-E.1 n.45 (May 20, 1998), that view "is not controlling," *Clackamas Gastroenterology Associates, P. C. v. Wells*, 538 U.S. 440, 449 n.9 (2003). And while we construe broadly the remedial provisions of Title VII, "[w]e must assume that Congress meant what it said"—and heed what it did not. *Pinter v. Dahl*, 486 U.S. 622, 653 (1988).

[14] 42 U.S.C. § 2000e-2(m).

[15] *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008) (construing "'[a]ll persons shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens'" to "encompass[] a [prohibition on] retaliation against a person who has complained about a violation of another person's contract-related 'right.'" (quoting 42 U.S.C. § 1981(a))); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *see also Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969).

[16] *See CBOCS*, 553 U.S. at 442; *Jackson*, 544 U.S. at 174; *Sullivan*, 396 U.S. at 237.

[17] 544 U.S. at 167.

the basis of sex,' in violation of Title IX."[18] But the *Jackson* Court expressly distinguished Title VII, calling it "vastly different."[19] The Court explained:

> Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition. . . . By contrast, Title VII spells out in greater detail the conduct that constitutes discrimination in violation of that statute. *See* 42 U.S.C. §§ 2000e-2 (giving examples of unlawful employment practices), 2000e-3 (prohibiting '[o]ther unlawful employment practices,' including . . . '[d]iscrimination' in the form of retaliation . . .). Because Congress did not list *any* specific discriminatory practices when it wrote Title IX, its failure to mention one such practice does not tell us anything about whether it intended that practice to be covered.[20]

Because Congress *did* list specific practices when it wrote Title VII, § 2000e-2(m)'s silence with respect to retaliation is informative.

*Gomez-Perez v. Potter*[21] is the exceptional case. In it, the Supreme Court considered whether a federal employee may assert a retaliation claim under 29 U.S.C. § 633a(a), part of the Age Discrimination in Employment Act (ADEA).[22] Section 633a(a) proscribes "discrimination based on age."[23] The Court held that the phrase reaches "retaliation based on the filing of an age discrimination complaint,"[24] even though § 623(d) "prohibit[s] retaliation against individuals who complain about age discrimination in the private sector."[25]

---

[18] *Id.* at 174.

[19] *Id.* at 175.

[20] *Id.*

[21] 553 U.S. at 474.

[22] *Id.* at 477,

[23] *Id.* at 479 (quoting 29 U.S.C. § 633(a)) (internal quotation marks omitted).

[24] *Id.*

[25] *Id.* at 481, 485.

The Court reasoned that § 633a(a) was enacted in 1974, only five years after *Sullivan* v. *Little Hunting Park, Inc.*[26] In *Sullivan*, the Supreme Court held that "'discrimination on the basis of race'" likewise proscribed retaliation.[27] The same is not true of the 1991 amendment to Title VII, however, which added § 2000e-2(m) seventeen years after *Sullivan*. And, more importantly, that amendment implicitly rejects reliance on *Sullivan*: it reorganizes and leaves unchanged the language in § 2000e-5(g)(2)(A), which addresses "discrimination on account of race, color, religion, sex, or national origin *or* in violation of section 2000e-3(a)."[28] This suggests that, at least for purposes of Title VII, "discrimination on account of race" does not include retaliation; likewise, employment practices motivated by retaliation are not employment practices motivated by race.[29] Finally, the specific anti-retaliation provision in the ADEA (§ 623(d)) applied to *private* employers, while the broad provision at issue (§ 633(a)) applied to *federal* employers. Thus, *Gomez-Perez* did not consider a situation precisely like this one, in which private employers are already subjected to an "antidiscrimination" and an "antiretaliation" prohibition, and Congress adds a provision that does not mention retaliation. Accordingly, while it is a close question, we do not believe that *Gomez-Perez*'s interpretation of the ADEA controls our interpretation of Title VII.[30]

---

[26] 396 U.S. at 229.

[27] *Gomez-Perez*, 553 U.S. at 481.

[28] 42 U.S.C. § 2000e-5(g)(2)(A).

[29] The language of § 2000e-5(g)(2)(A) was, of course, part of Title VII as originally enacted. The point is not that the 1991 amendment *introduced* this language, it is that it *reaffirmed* the language—reorganizing it without making any substantive changes.

[30] Carter also argues that § 2000e-5(g) must authorize relief for retaliation claims, since § 1981a(1) authorizes damages for claims under § 2000e-2(a) and § 2000e-3(a) "in addition to any relief authorized by [Section § 2000e-5(g)]." 42 U.S.C. § 1981a. Even if true, the fact that § 2000e-5*(g)* must reach retaliation claims does not mean that § 2000e-5*(g)(2)(B)(i)* must reach such claims. *See* § 2000e-5(g)(1), (2)(A).

## C.

We pause to note a concern not raised by either of the parties. As discussed above, § 2000e-2(m) closely tracks the language in § 2000e-2(a), Title VII's "core antidiscrimination provision." But it does so imperfectly. Section 2000e-2(a) targets discrimination against an individual "because of *such individual's* race, color, religion, sex, or national origin."[31] That language—"such individual's"—is glaringly absent from § 2000e-2(m). The parties do not suggest what work this omission was intended to do. It could, for example, prohibit discrimination based on someone's *association* with persons of a particular race. Or it might prohibit retaliation against a person who objects to racial harassment levied against someone of a different race.[32] Nevertheless, we are unwilling "to assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message"—namely, that § 2000e-2(m) reaches retaliation.[33] Accordingly, we maintain that § 2000e-2(m) does not do so.

* * *

Section § 2000e-5(g)(2)(B)(i) authorizes cost- and fee-shifting only for violations of § 2000e-2(m). Retaliation does not violate § 2000e-2(m). Consequently, the district court correctly decided that § 2000e-5(g)(2)(B)(i) does

---

[31] 42 U.S.C. § 2000e-2(a).

[32] *Cf. Jackson*, 544 U.S. at 179 ("[Title IX] does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint. If the statute provided instead that 'no person shall be subjected to discrimination on the basis of *such individual's* sex,' then we would [conclude otherwise]." (citing 42 U.S.C. § 2000e-2(a)).

[33] *Landgraf v. USI Film Products*, 511 U.S. 244, 262 (1994).

not authorize cost- and fee-shifting for retaliation claims. We therefore AFFIRM.[34]

---

[34] The Supreme Court will soon hear argument concerning whether mixed-motive retaliation claims are cognizable under § 2000e-3(a). *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 978 (2013). In *Smith v. Xerox Corp.*, we held that such claims are cognizable. 602 F.3d 320, 330 (5th Cir. 2010). We did not hold, however, that they are cognizable under § 2000e-2(m). *See id.* at 329 and n.28, 330.